IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-00530-FDW
(3:11-cr-00365-FDW-DCK-1)

| | |
|---|---|
| STANLEY BENTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court on consideration of Petitioner's pro se Motion to Vacate, Set Aside or Correct Sentence which he filed pursuant to 28 U.S.C. § 2255. For the reasons that follow, Petitioner's § 2255 Motion will be dismissed.

I.  BACKGROUND

On November 15, 2011, Petitioner was indicted by the grand jury in this District on two counts of kidnaping and transporting two victims in interstate commerce. The first count involved Petitioner's girlfriend, in violation of 18 U.S.C. § 1201(a), and the second count involved the abduction of her minor child, in violation of 18 U.S.C. § 1201(a) and (g). (3:11-cr-00365, Doc. No. 1: Indictment). Petitioner entered into a written plea agreement in which he agreed plead guilty to Count 1 in exchange for the Government's agreement to dismiss Count 2 if his plea was accepted. Petitioner agreed to enter his plea pursuant to Rule 11(c)(1)(C) which included the following binding recommendations: (1) a base offense level of 32 pursuant to § 2A4.1 of the U.S. Sentencing Guidelines Manual (USSG)(2013); (2) a two-level enhancement because Petitioner used a dangerous weapon during the kidnapping (USSG § 2A4.1); (3) that the

1

Government agrees the Petitioner's guilty plea was timely and he would qualify for a three-point reduction for acceptance of responsibility; (4) that Petitioner would be sentenced to a term of 188-months' imprisonment, and (5) that if the Court did not accept each of the binding terms of the parties' agreement then Petitioner would be free to withdraw his guilty plea. (Id., Doc. No. 47: Plea Agreement ¶ 7).

Petitioner appeared before the magistrate judge for his Plea and Rule 11 hearing and he was placed under oath and the elements of Count 1 were explained to him and the minimum and maximum penalties. Petitioner averred that he understood the elements of Count 1 and the potential penalties; that he understood and agreed with the terms of his plea agreement; and that no one had promised him any particular sentence, or made any promises that were not contained within the written plea agreement. In particular, when asked whether there were promises other than those in the plea agreement, Petitioner recounted nearly verbatim the binding stipulations regarding his total offense level, which included the three-point reduction for acceptance responsibility, and his decision to accept a binding term of 188-months in prison. The court's questions, along with Petitioner's answers were reduced to writing and presented to him. Petitioner reviewed his answers and he agreed that they were true and accurate, and the court accepted Petitioner's guilty plea after finding that it was knowingly and voluntarily entered. (Id., Doc. No. 48: Acceptance and Entry of Guilty Plea).[1]

The U.S. Probation Office prepared a presentence report ("PSR") and calculated a base offense of level of 32 under USSG § 2A4.1, and applied a two-level enhancement for the use of a dangerous weapon pursuant to USSG § 2A4.1(b)(3), but did not deduct three points for

---

[1] Because Petitioner did not appeal his sentence, there is no transcript of the Rule 11 hearing. The findings that are provided here are drawn from that FTR recording and from discussions with Petitioner during sentencing.

acceptance of responsibility. With a total offense level of 34 and a criminal history category III (5 points), Petitioner's Guideline range was 188-235 months in prison. (Id., Doc. No. 60: Revised PSR).

On February 24, 2015, Petitioner appeared with counsel for his sentencing hearing. At the outset of the hearing, Petitioner expressed dissatisfaction with his attorney and the Court engaged Petitioner in a colloquy on the issue. Petitioner expressed concern that his attorney was not attentive to his questions regarding the contents of the PSR. Namely, questions about the assessment of five criminal history points and whether he still qualified for the three-level reduction for timely acceptance of responsibility. The Court confirmed that the five criminal history points were correct and that Petitioner would be eligible for at least a two-level reduction for acceptance of responsibility, and that the parties could address the third point at a later time. With this established, Petitioner stated that he was satisfied with his counsel's representation and that he wanted counsel to continue to represent him.

The Court next addressed Petitioner regarding his participation in the Plea and Rule 11 hearing. Petitioner confirmed that the answers that he had provided during his Rule 11 hearing were true and that he would give the same answers if they were posed again during sentencing. Petitioner acknowledged that he had reviewed the Acceptance of Plea Form and that the magistrate judge had correctly recorded his answers. Finally, Petitioner admitted that he was pleading guilty to the kidnapping and transportation conduct as charged in Count 1 because he was in fact guilty. The parties stipulated that the Court could rely on the offense conduct in paragraphs 4-10 of the Revised PSR to support a factual basis for Petitioner's plea, and after considering this information and Petitioner's answers regarding the Rule 11 hearing, the Court

found that a factual basis existed and his guilty plea was accepted.

The Government agreed to recommend the third point for acceptance of responsibility which reduced Petitioner's total offense level to 31 and with a category III criminal history, his Guidelines range was 135-168 months, however Petitioner had already agreed to be sentenced to 188 months. The Government explained that at the time the agreement was negotiated there was some question about whether a vulnerable victim enhancement would apply, and the Government wanted the severity of his sentence to reflect the fact that he abducted a child and that he had a serious criminal history. The Government noted that if the vulnerable victim enhancement did not apply that it would have moved for an upward variance. With the uncertainty of the sentence at that stage of the plea negotiations, the parties agreed to the negotiated sentence of 188 months.[2]

The Court expressed concern that the 188 months was negotiated while the parties were still gathering information but nevertheless noted that it was a vigorously contested plea that was agreed to by the Petitioner and the Government. The Court explained to Petitioner that the 188 months could be rejected and the plea agreement set aside, and the parties could then resume negotiations. Petitioner conferred with counsel and Petitioner informed the Court that he would accept the 188 month sentence because he knew that it was the highest sentence he could receive. The Court closely questioned Petitioner about this decision and he confirmed that he wished to abide by the express terms of his plea agreement and that he would therefore accept the certainty of the 188 months. After hearing from counsel and Petitioner, the Court sentenced Petitioner in accordance with the terms of the plea agreement to the 188-month term and

---

[2] If the plea agreement were set aside and Petitioner was later found guilty after trial he could have been sentenced up to the statutory maximum of life imprisonment on Count 2 pursuant to 18 U.S.C. § 1201(a)(1) and (g).

Petitioner did not appeal. (Id., Doc. No. 62: Judgment).

In this collateral proceeding Petitioner raises two claims: (1) ineffective assistance of counsel with regard to his sentencing; and (2) that the Government breached the plea agreement by not including the three-point reduction for acceptance of responsibility in the agreement. (3:15-cv-0530, Doc. No. 1). Petitioner's contentions will be addressed herein.

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the effective assistance of counsel to assist in his defense. U.S. Const. amend. VI. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v.
5

United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, a Petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

A.  Ground One

Petitioner first argues that his sentencing counsel was ineffective because he labored under a conflict of interest and this caused him to not vigorously defend him at sentencing which resulted in a breach of loyalty and a higher sentence. (3:15-cv-00530, Doc. No. 1: Petition at 4-6).

Petitioner's counsel at sentencing, Mr. Peter Adolf, who was an attorney with the Federal Defenders of Western North Carolina, was first appointed to represent him during his

6

arraignment on December 8, 2011. After his appointment, Petitioner filed five pro se documents in which he challenged his federal prosecution.[3] Mr. Adolf filed a motion for inquiry into status of counsel after noting these filings and because he had a difficult time meeting with Petitioner and in ascertaining whether Petitioner wanted him to continue as counsel. (3:11-cr-00365, Doc. No. 14). After hearing from Petitioner and Mr. Adolf, the Court ordered that Mr. Adolf could proceed as counsel. However, based on Petitioner's pro se filings, each of which were wholly frivolous and delusional, the Court ordered that he undergo a psychiatric examination to assess his competency to stand trial. (Id., Doc. No. 30: Sealed Order).[4] After his examination, the Court held a hearing and found Petitioner competent to stand trial on October 8, 2013. On December 31, 2013, Petitioner, now represented by Mr. Hill, entered into the plea agreement that was detailed above, and his case was referred to the U.S. Probation Office for preparation of the Presentence Report. Mr. Adolf was reappointed to represent Petitioner for the sentencing phase on December 19, 2014, and Mr. Hill was relieved from further responsibility.

    The gravamen of Petitioner's argument in this collateral proceeding is that because Petitioner filed a civil lawsuit against Mr. Adolf, he should not have been reappointed to represent him. See (3:12-cv-00178-RJC, Doc. No. 1: Complaint).

---

[3] The first pro se document was a motion to dismiss the charges which relied, in part, on the Uniform Commercial Code ("UCC") to support relief. (3:11-cr-00365, Doc. No. 9). The second filing entitled "Notice of Reservation of Rights" also cited the UCC to support relief. (Id., Doc. No. 10). In the third filing, entitled "Affidavit Denial of Corporate Existence," Petitioner denied that he was a statutory person and insisted that he did not have a contract with the FBI, among other claims, and that he was being prosecuted against his will. (Id., Doc. No. 11). In the fourth filing, which Petitioner labeled "Affidavit Denying License and Contract Existence," he presented equally frivolous claims. (Id., Doc. No. 12). The fifth document was a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which Petitioner again cites the UCC in support of relief. (Id., Doc. No. 13).

[4] Mr. Henderson Hill was appointed to represent Petitioner on September 12, 2012, and Mr. Adolf was relieved from representation at that time.

To establish that his attorney had a conflict of interest, a petitioner bears the burden of establishing (1) that there was an actual conflict of interest; and (2) that the conflict impaired counsel's performance. See United States v. Nicholson, 611 F.3d 191, 195 n.2 (4th Cir. 2010) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)). If a petitioner can satisfy both prongs of this test, "no prejudice need be shown because the conflict of interest is assumed to be harmful." United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991). When examining the first element, a petitioner must demonstrate "[m]ore than a *mere possibility* of conflict." Id. (emphasis in original). Instead, the petitioner must prove that his attorney had an "actual conflict," which the Fourth Circuit has defined as existing when the attorney "actively represents conflicting interests." Id. (emphasis omitted).

Petitioner fails to establish either element of this test. First, the complaint against Mr. Adolf was dismissed for failure to state a claim for relief on September 20, 2012, which is more than two years before Mr. Adolf was reappointed to represent Petitioner for the sentencing phase of his trial, and Petitioner's plea agreement was not negotiated by Mr. Adolf as he had been relieved from representation on September 12, 2012. See (3:12-cv-00178-RJC, Doc. No. 11: Order Dismissing Case). Mr. Hill was appointed on the same day Mr. Adolf was relieved, and it was Mr. Hill that negotiated the plea agreement that Petitioner signed on December 31, 2013. In other words, Petitioner had already sworn that he agreed to be bound by a sentence of 188 months – unless the Court would not accept the plea agreement – before Mr. Adolf was reappointed thus there can be no showing of prejudice because the lawsuit was dismissed and no legal action was pending at the time Mr. Adolf was reappointed.

Second, during sentencing the Court carefully questioned Petitioner as to whether he

8

wanted Mr. Adolf to continue to represent him and Petitioner repeatedly affirmed that he did.

Based on the foregoing, Petitioner cannot establish that he is entitled to relief because there is no showing of a conflict, and in any event there is no evidence that Mr. Adolf's performance was adversely affected because Petitioner knowingly accepted the sentence for which he bargained even though he was provided the opportunity to set aside the plea agreement.

B.  Ground Two

Petitioner next argues that the Government breached the plea agreement when it failed to include a three-point reduction for timely acceptance of responsibility in the agreement. (3:15-cv-00530, Petition at 7). Petition contends that the three-point reduction "induced" him into accepting the plea. This argument fails for two reasons.

First, the Government did include the three-point reduction in the plea agreement. See (3:11-cr-00365, Doc. No. 47: Plea Agreement ¶ 7(c) ("The Government agrees that the defendant's entry of plea is timely for purposes of U.S.S.G. § 3E1.1(b)). Following this provision, however, is the following: "**The Government and the Defendant make the binding recommendation to the Court that Defendant should be sentenced to a term of imprisonment of 188 months . . .**" (Id. ¶ 7(d)) (bold in original).

To the extent Petitioner contends that his plea was not knowing and voluntary because he believed he would receive a sentence lower than 188 months upon the application of the three-point reduction, this contention must fail. A petitioner is bound by his sworn statements which he makes during a properly conducted Rule 11 hearing and as this Court found during sentencing, and reaffirms herein, Petitioner's Rule 11 hearing was properly conducted therefore his late claim of inducement or an unknowing plea must fail. See, e.g., Blackledge v. Allison, 431 U.S.

9

63, 73-74 (1977) ("For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005).

Second, after his Guidelines range was established by the Court during sentencing, which provided for a range of 135-168 months in prison, Petitioner was questioned by the Court and provided the opportunity to withdraw his guilty plea and resume negotiations. After consulting with Mr. Adolf, Petitioner repeatedly affirmed that he would like the Court to accept the plea agreement and sentence him to 188 months because he wanted the certainty of that sentence. Thus, Petitioner's contention that he was induced into entering the plea agreement because he believed he may receive a lower sentence with the application of the three-point reduction is belied by the record. Put plainly, Petitioner bargained for and received the sentence of his choice.

For the foregoing reasons, the Court finds that Petitioner final claim for relief is without merit and it will be dismissed.

IV. CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 Motion is without merit and it will be dismissed.

**IT IS, THEREFORE, ORDERED** Petitioner's § 2255 Motion to Vacate is **DENIED** and **DISMISSED with prejudice**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not

made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is respectfully directed to close this civil case.

**SO ORDERED.**

Signed: November 20, 2015

Frank D. Whitney
Chief United States District Judge